UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA POMPA, | : |
| Plaintiff | : CIVIL ACTION NO. 3:21-1378 |
| v. | : (JUDGE MANNION) |
| ST. LUKE'S HOSPITAL, *et al.* | : |
| Defendants | : |

# MEMORANDUM

Pending before the court are two motions to dismiss the defendants' counterclaims filed by Plaintiff Lisa Pompa. (Docs. 12 & 19). Defendants filed an amended answer shortly after Pompa's first motion to dismiss was filed, which, as Pompa acknowledges, supersedes Defendants' original pleading and renders moot Pompa's first motion to dismiss; accordingly, Pompa's first motion to dismiss, (Doc. 12), will be **DISMISSED AS MOOT**. Pompa's second motion to dismiss attacks Defendants' operative pleading, (Doc. 14, Amended Answer), for failure to state a claim upon which relief can be granted. Defendants' Amended Answer contains four counterclaims against Pompa for breach of fiduciary duty, negligence, gross negligence, and unjust enrichment. (Doc. 14). Pompa moves to dismiss all four counterclaims asserted in Defendants' Amended Answer, arguing that the breach of

fiduciary duty, negligence, and gross negligence claims are barred by Pennsylvania's two-year statute of limitations, and that the unjust enrichment claim cannot be sustained as a matter of law because the other counterclaims are time-barred. (Doc. 20). As explained below, since Defendants bring their counterclaims well over two years after their claims against Pompa accrued, their claims are time-barred; thus, the court will **GRANT** Pompa's motion to dismiss.

I.   **BACKGROUND**

The factual background of this case is taken from the factual allegations set forth in Defendants' Amended Answer, (Doc. 14), which the court must accept as true for purposes of Pompa's motion to dismiss.

In 1984, Plaintiff Lisa Pompa was hired by Gnaden Huetten Memorial Hospital ("Gnaden Huetten"), which employed Pompa until 2004. Pompa's job title was changed to Exercise Physiologist in 1993, and in 2000, she became the Coordinator of Gnaden Huetten's Cardiopulmonary Rehabilitation program. In 2004, Gnaden Huetten merged with Palmerton Hospital to form Blue Mountain Health System ("BMHS"). Plaintiff worked for BMHS from 2004 until May 2018. In 2008, BMHS changed Pompa's job title to Supervisor of the Cardiopulmonary Rehab program. In June 2018, and

following St. Luke's acquisition of BMHS, Pompa's title was changed to Manager of the Cardiopulmonary Rehab program, wherein she reported to Mr. William Merkert, Director of Cardiopulmonary Rehabilitation. Pompa's primary responsibilities did not change from what they had been at BMHS. In or around June and July 2018, St. Luke's determined that Pompa and BMHS staff were not doing 1:1 therapy as it is defined under the Centers for Medicare and Medicaid Services ("CMS") guidelines; thus, the services they offered could not be billed under the G0238 code and instead had to be billed using the G0239 code.

  Merkert sent Pompa an email on August 24, 2018, addressing her alleged ongoing refusal to phase out use of the G0238 billing code despite prior directives to do so and numerous conversations regarding St. Luke's expectations concerning compliant billing practices. From that day until December 2018, Merkert was aware that Pompa was continuing to disregard the directive he issued to her in the August 24 email, as well as identical instructions given to Pompa in meetings on October 30 and November 5, 2018. During that period, Merkert was also consulting with HR and Compliance at St. Luke's to keep them informed of Pompa's actions and determine the best way to deal with her alleged insubordinate behavior. Pompa's behavior culminated on December 14, 2018, after St. Luke's

Compliance Department conducted a billing inquiry and learned that Pompa had reversed Merkert's reversal of her G0238 billing code for therapy provided to a patient on December 13, 2018. During a meeting on December 20, 2018, Merkert informed Pompa that her actions were insubordinate, and he reiterated that her continued coding practice was unethical and inappropriate, and that her coding was considered "upcoding" in violation of federal law. At the same meeting, St. Luke's informed Pompa that she was being suspended for her misuse of the G0238 billing code on December 13 and 14, her reversing of Merkert's change of her coding on December 14, and her continuous disregard for Merkert's authority as evidenced thereby.

While all this was going on, Pompa met with Human Resources on November 20, 2018, to discuss allegations of age discrimination against Merkert that she had made in an email to HR on November 15, 2018. Merkert was made aware of Pompa's discrimination claims "in late November 2018" when HR investigated Pompa's claims and reached out to Merkert to get his response thereto. St. Luke's avers, "Merkert's awareness of [Pompa's] allegations had no bearing on or relation to [Pompa's] subsequent suspension and termination[.]" (Doc. 14, ¶96). St. Luke's terminated Pompa on January 8, 2019. Because of Pompa's improper upcoding by using the G0238 code, St. Luke's deemed it necessary to reimburse CMS the amount

of $30,008.75, for which it seeks recoupment from Pompa through its counterclaims filed in this case.

II. **LEGAL STANDARD**

Pompa's motion to dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the complaint—or, in this case, St. Luke's Amended Answer containing its counterclaims against Pompa—fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all the facts alleged in the complaint as true, the non-moving party has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the non-moving party's cause of action. *Id.* Furthermore, to satisfy federal pleading requirements, the non-moving party

must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544 at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250,1261 (3d Cir. 1994).

Finally, the court should generally grant leave to amend a pleading before dismissing it as merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v.*

*Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

### III. DISCUSSION

#### A. St. Luke's counterclaims for breach of fiduciary duty, negligence, and gross negligence

Pompa urges the court to dismiss Defendants' counterclaims for breach of fiduciary duty, negligence, and gross negligence as untimely under Pennsylvania's two-year statute of limitations.

A statute of limitations defense is an affirmative defense that typically must be plead in an answer. *Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014). Nevertheless, "[the Third Circuit] permit[s] a limitations defense to be raised by a motion under Rule 12(b)(6) only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Robinson v. Johnson,* 313 F.3d 128, 134–35 (3d Cir. 2002)) (internal quotation marks omitted). Thus, a district court may grant a motion under Rule 12(b)(6) raising a limitations

defense if "the face of the complaint" demonstrates that the plaintiff's claims are untimely. *Id.* (quoting *Robinson,* 313 F.3d at 134–35).

Pompa argues dismissal is appropriate here because Defendants' Amended Answer, on its face, reveals that the counterclaims for breach of fiduciary duty, negligence, and gross negligence were not brought within the two-year limitations period. The court applies Pennsylvania law to decide whether the face of Defendants' counterclaims demonstrates that they are untimely. *See In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 336 (3d Cir. 2004) (state law supplies the statute of limitations and tolling principles applicable to common law claims). "Pennsylvania favors strict application of the statutes of limitation." *Hodges v. Sunrise Senior Living Management, Inc., et al.*, No. CV 22-2201, 2023 WL 2163887, at *2 (E.D. Pa. Feb. 21, 2023) (citing *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572 (Pa. Super. Ct. 2007)).

Defendants do not contest that Pennsylvania applies a two-year statute of limitations to its counterclaims for breach of fiduciary duty, negligence, and gross negligence. *See* 42 Pa.C.S.A. §5524(7).[1] That period

---

[1] This section prescribes a two-year statute of limitations for:

Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or

*(footnote continued on next page)*

commences when the cause of action accrues. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 218 (3d Cir. 2022) (citing *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 246 (Pa. 2021)). "Normally, a cause of action accrues 'when an injury is inflicted.'" *Rice*, 255 A.3d at 246 (quoting *Wilson v. El-Daief*, 964 A.2d 354, 361 (Pa. 2009)). Thus, the clock "begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations[.]" *Id.* (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).

Here, the court need not delve into the precise date of accrual of St. Luke's counterclaims because the record clearly demonstrates they accrued by December 2018 at the latest. Defendants admit St. Luke's suspended Pompa on December 20, 2018, for her alleged improper use of billing code G0238 for therapeutic services that did not warrant a G0238 code. Pompa's

---

> otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa.C.S.A. § 5524(7); *see also Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005) (recognizing 42 Pa.C.S.A. §5524(7) prescribes a two-year statute of limitations for breach of fiduciary duty claims); *Makozy v. Dietz*, No. 20-3050, 2022 WL 17335815, at *1 (3d Cir. Nov. 30, 2022) (recognizing 42 Pa.C.S.A. §5524 prescribes a two-year statute of limitations for negligence claims).

coding habits, which preceded her suspension on December 20 and her eventual termination, are the basis of Defendants' counterclaims; accordingly, their counterclaims against Pompa accrued, if at all, by December 2018 at the latest. Defendants filed their counterclaims on January 13, 2022, more than three years after those claims accrued. Thus, dismissal of Defendants' claims for breach of fiduciary duty, negligence, and gross negligence is appropriate.

Defendants claim dismissal is inappropriate for two reasons. First, Defendants argue the court should not dismiss their counterclaims at this stage because "facts and matters outside of the complaint" are relevant to a determination of the applicability of the statute of limitations.[2] But Defendants fail to supply any "fact or matter" outside the complaint that would have a bearing on the timeliness of their counterclaims. As the court found above, the face of Defendants' pleading makes clear their claims accrued in December 2018 at the latest; thus, under Third Circuit case law, dismissal is appropriate at the 12(b)(6) stage. Second, Defendants argue the court should apply the doctrine of equitable tolling to save their counterclaims. The

---

[2] (Doc 23 at 6) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir. 2003) ("The facts necessary to establish an affirmative defense [such as statute of limitations] must generally come from matters outside of the complaint.")).

Third Circuit has explained that "equitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has "in some extraordinary way" been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 753 (3d Cir.1983) (citations omitted). None of those three grounds for equitable tolling exist in this case. Defendants aver "it appears likely that Pompa has acted dilatorily in prosecuting this action in a deliberate attempt to stave off the counterclaims St. Luke's represented [in September 2019] it would pursue if this matter proceeded to court." However, Defendants' conjecture regarding Pompa's motivations for filing this case when she did does not show she "actively misled" Defendants; nor does it show that Defendants have "in some extraordinary way been prevented" from asserting their counterclaims, or that Defendants "timely asserted [their] rights in the wrong forum." *See Kocian*, 707 F.2d at 753. Thus, there are no grounds for equitable tolling.[3]

[3] Moreover, as Pompa points out, courts in this Circuit have determined that the statute of limitations for filing a tort counterclaim can only be tolled if the plaintiff commences her action within the two-year period for bringing the counterclaim. (Doc. 27 at 6). *See, e.g., PAETEC Commc'ns, Inc. v. MCI Commc'ns Servs., Inc.*, 712 F.Supp.2d 405, 418 (E.D. Pa. 2010) ("The rule regarding compulsory counterclaims . . . only tolls the statute of limitations if the lawsuit itself was brought within the limitations period. '[I]f defendant's claim already is barred when plaintiff brings suit, the notion of tolling the

*(footnote continued on next page)*

Finally, it would not be "unfair," as Defendants aver, to apply the statute of limitations to their counterclaims as required under Pennsylvania law. Defendants acknowledge they were aware of Pompa's actions which form the basis of their counterclaims by December 2018 at the latest—St. Luke's suspended her at that time for the same conduct. Defendants further acknowledge St. Luke's informed Pompa of its intention to file the counterclaims against her back in September 2019 for the $30,008.75 in harm she allegedly caused. Defendants instead waited three years from the date of accrual to bring their $30,000 plus counterclaims.[4] Those claims must be dismissed as untimely under Pennsylvania's two-year statute of

---

statute is inapplicable and the fact that the tardily asserted claim is a compulsory counterclaim does not serve to revive defendant's right to assert it.'") (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1419 (2d ed. 2010)). Pompa brought this suit more than two years after Defendants' counterclaims accrued, so tolling is inapplicable under this theory as well.

[4] Defendants also argue that enforcing the statute of limitations in this case would essentially penalize St. Luke's for not initiating a civil action against Pompa during the investigation phase of her own complaint filed with the Pennsylvania Human Rights Commission. Defendants reason they would have been ill-advised to take such action due to the possibility that Pompa would have claimed retaliation had they done so. However, litigation strategy, judicious or not, is not a ground for equitable tolling; as such, Defendants have still not put forth a ground for equitable tolling under applicable law.

limitations.[5] Moreover, dismissal will be with prejudice because the court finds amendment would be futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.") (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997)). Defendants have already amended their counterclaims once; their amendment did not make any changes to their first three counterclaims but simply added a fourth claim for unjust enrichment. In light of this fact and considering the clear bar on their claims due to untimeliness, any amendment would be futile.

---

[5] Defendants note in their brief in opposition that, even if the court dismissed their counterclaims as untimely, "St. Luke's would nonetheless be entitled to assert its tort counterclaims as compulsory counterclaims and obtain damages up to the point of recoupment." (Doc. 23 at 11) (citing *Reiter v. Cooper*, 507 U.S. 258, 263–64 (1993) ("Recoupment claims are generally not barred by a statute of limitations so long as the main action is timely.")). Equitable recoupment is more properly asserted as a defense, not an independent claim. *See Mellon Bank, N.A. v. Pasqualis-Politi*, 800 F.Supp. 1297, 1301 (W.D. Pa. 1992) ("Under Pennsylvania law, as under federal law, a defendant may assert under the equitable doctrine of recoupment a *defense* which could not be asserted affirmatively as a counterclaim because of the bar of the statute of limitations.") (emphasis added). Defendants are free to seek leave to amend their pleading to attempt to add a defense of recoupment, but amendment cannot be achieved via a brief in opposition to a motion to dismiss.

## B. St. Luke's counterclaim for unjust enrichment

Next, having found Defendants' first three of four counterclaims fail, the court must decide whether Defendants' final counterclaim for unjust enrichment can proceed. Defendants added this fourth counterclaim in its Amended Answer, (Doc. 14), after Pompa filed her first motion to dismiss Defendants' prior pleading. The unjust enrichment claim is based exclusively on Pompa's alleged insubordinate conduct related to improper coding "[w]hile serving as an employee of St. Luke's," and seeks the same monetary recovery of $30,008.75 Defendants sought in their claims for breach of fiduciary duty, negligence, and gross negligence. As plead, Defendants' unjust enrichment claim is clearly derived from the other counterclaims since they allege in paragraph 22:

> While serving as an employee of St. Luke's, Pompa received valuable benefits, compensation at her full rate of pay, and no offset, set-off or reduction to her regular compensation to account for the aforementioned financial losses incurred by St. Luke's *as a direct result of her breach of fiduciary duty, negligence, and/or gross negligence as described herein*.

(Doc. 14 at 53) (emphasis added). Accordingly, Pompa argues that since the first three counterclaims fail Defendants' counterclaim for unjust enrichment cannot proceed on its own and fails as a matter of law. The court finds this conclusion is appropriate under applicable precedent.

In this context, "an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)." *Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999). As the District Court in the Eastern District of Pennsylvania has explained:

> Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim. *Compare id.* at 937 (dismissing the plaintiff's unjust enrichment claim because it was based on the same improper conduct as the plaintiff's traditional tort claims, which were dismissed for lack of proximate cause), with *Weiler v. SmithKline Beecham Corp.*, 53 Pa. D. & C.4th 449, 466, 2001 WL 1807382 (Pa. Com. Pl. Ct. 2001) ("Because their tort counts have survived the Objections, the Plaintiffs may proceed on their claim for unjust enrichment.").

*Whitaker v. Herr Foods, Inc.*, 198 F.Supp.3d 476, 493 (E.D. Pa. 2016); *see also Burrell v. Staff*, 2023 WL 1811015, at *27 n.18 (3d Cir. February 8, 2023) (Matey, J., concurring in part and dissenting in part) ("As Plaintiffs have no valid TVPA or FLSA claim, they have no unjust enrichment claim, as the District Court properly concluded.") (citing *Whitaker*). Therefore, "an unjust enrichment claim based on wrongful conduct cannot stand alone as a substitute for the failed tort claim." *Whitaker*, 198 F.Supp.3d at 493 (citing *Zafarana v. Pfizer, Inc.*, 724 F.Supp.2d 545, 561 (E.D. Pa. 2010)). As stated, Defendants' unjust enrichment claim is based on the same wrongful conduct

alleged in their first three counterclaims; those claims failed, so the unjust enrichment claim "fall[s] with [them]." *See id.*

Defendants attempt to distinguish this case from *Steamfitters*, arguing the Third Circuit in that case found the unjust enrichment claim could not proceed on its own after the underlying claims were dismissed for a substantive reason: "the remoteness of plaintiffs' injuries from defendants' wrongdoing." *Steamfitters*, 171 F.3d at 937. According to Defendants, then, *Steamfitters* is inapplicable because their counterclaims were dismissed for a procedural reason: the statute of limitations. Defendants read the *Steamfitters* line of cases too narrowly. Regardless of whether the reason for dismissal of Defendants' counterclaims is properly categorized as procedural rather than substantive, Defendants' attempt at distinguishing *Steamfitters* fails because the Third Circuit's holding regarding the viability of the unjust enrichment claim was not so limited to cases where the underlying claims are dismissed for substantive reasons. While the underlying tort claims in *Steamfitters* and *Whitaker* were dismissed for so-called substantive reasons, those courts did not rest their unjust enrichment dismissals on the nature of or reason for dismissal of the underlying claims but on the mere fact that the underlying claims were dismissed. *See Whitaker*, 198 F.Supp.3d at 493-94 ("Where the unjust enrichment claim rests on the same improper conduct as

- 16 -

the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim . . . Plaintiff cannot use unjust enrichment to circumvent the deficiencies in his tort claims") (citing *Steamfitters*). Moreover, dismissing Defendants' unjust enrichment claim after their underlying tort claims failed is consistent with the nature of an unjust enrichment claim, which, as detailed above, "is essentially another way of stating a traditional tort claim," *Steamfitters*, 171 F.3d at 936, and "may be pled as a companion, not an alternative, to a claim of unlawful or improper conduct as defined by law— *e.g.*, a tort claim," *Whitaker*, 198 F.Supp.3d at 493.

Therefore, the court will dismiss Defendants' unjust enrichment claim which is entirely based on their failed counterclaims for breach of fiduciary duty, negligence, and gross negligence. Moreover, dismissal will be with prejudice; since the court dismissed the underlying claims with prejudice due to futility, it would also be futile to permit amendment of the unjust enrichment claim.

**IV.    CONCLUSION**

In light of the foregoing, Pompa's first motion to dismiss, (Doc. 12), will be **DISMISSED AS MOOT**, and second motion to dismiss, (Doc. 19), will be **GRANTED**. An appropriate order follows.

                                                              *s/ Malachy E. Mannion*
                                                              **MALACHY E. MANNION**
                                                              **United States District Judge**

**DATE: March 2, 2023**
21-1378-01